UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

MICHAEL B. KINGSLEY,

    Plaintiff,

V.

    Case No. 14 C 548

DENISE SYMDON, LANCE WIERSMA,
MICHELE KRUEGER, and BEN SEARLS,

    Defendants.

---

COMPLAINT UNDER THE CIVIL RIGHTS ACT
42 U.S.C. § 1983

---

NOW COMES the plaintiff, Michael B. Kingsley Pro Se, and would respectfully ask this Honorable Court to liberally construe this pleading as that term is defined in Haines v. Kerner, 404 U.S. 519 (1972) And hereby moves the Court pursuant to 42 U.S.C. § 1983.

INTRODUCTION

This is a Civil Rights action filed by Michael B. Kingsley, a state prisoner at the Wisconsin Resource Center, in Winnebago, Wisconsin seeking declaratory, injunctive, and monetary relief alleging the conditions of extended supervision or parole violate the 4th, 5th, 8th, and 14th Amendments and Articles I, §§ 1, 2, 6, 7, and 11, of the United States and Wisconsin Constitutions.'

JURISDICTION

1. This Court has jurisdiction over plaintiff's claim of violations of Federal Constitutional Rights under 42 U.S.C. 1331(1) and 1343.

2. This Court has supplemental jurisdiction over the plaintiff's State Constitutional claim under 28 U.S.C. § 1367.

## PARTIES

3. The plaintiff Michael B. Kingsley ("Kingsley") is currently a prisoner at the Wisconsin Resource Center ("WRC"), in Winnebago, Wisconsin, and is due to be released on October 7, 2014.

4. The defendants Denise Symdon ("Symdon"), is an administrator, Lance Wiersma ("Wiersma"), is a regional chief, Michele Krueger ("Krueger"), is a supervisor, and Ben Searls ("Searls") is an agent. All said defendants are agents for the Wisconsin Department of Corrections, they are sued in their individual and official capacities.

5. All said defendants were acting and continues to act under color of state and federal law at all times relevant to this complaint.

## FACTS

6. On May 28, 2014, Kingsley had a teleconference with Searls and his WRC assigned social worker concerning his up coming release from prison. Searls discussed among other things that Kingsley will be placed on Electronic Monitoring Program ("EMP"), (ankle bracelet) and placed in a Correctional facility (halfway house) coupled with mandated treatment programs i.e., Anger Managment and Cognitive Group Intervention Program (CGIP).

7. Kingsley humbly objected and told Searls that he did not feel as though he needed to be on EMP nor in a halfway house or that the treatment programs were necessary. Searls told Kingsley that a failure to comply with those rules and conditions would be a violation of his Extended Supervision, warrantable of revocation. Kingsley seeked review to Searls supervisor via Wisconsin Administrative Code DOC § 328.11, Client complaint process.

8. On June 2, 2014, Kingsley received a response to his complaint by Krueger, Krueger upheld Searls decisions and further added that Kingsley will be "under Enhanced Supervison." Kingsley's timely appeal followed.

-2-

9. On June 5, 2014, Kingsley sent Wiersma his appeal. Wiersma either willfully or inadvertently did not respond or issue a written decision within 10 days as required under DOC § 328.11(7). And as of this day Kingsley has not heard anything. Kingsley's timely appeal sequence followed.

10. On June 25, 2014, Kingsley sent Symdon his appeal calling into question the lawfulness and Constitutionality of the rules and conditions of extended supervision as they will be applied to Kingsley upon his release. Symdon either willfully or inadvertently did not respond within the time limits nor did she notify Kingsley that she was unable to reach a decision. And as of this day Kingsley has not heard anything.

11. On July 22, 2014, Kingsley was required to sign the rules and conditions of extended supervision.

12. Kingsley has exhausted all available administrative remedies with respect to all claims in this matter.

## LEGAL THEORY
## CHALLENGES TO PAROLE CONDITIONS

13. As a threshold matter, and as Kingsley has gathered, a parolee may challenge a rule or condition of parole if his or her claim, if successful, would neither result in speedier release from parole nor imply, either directly or indirectly, the invalidity of the criminal judgment underlying that parole term. See Drollinger v. Milligan, 552 F.2d 1220 (7th Cir. 1977); Simpson v. Rowan, 73 F.3d 134 (7th Cir. 1995); Booker v. Ward, 94 F.3d 1052 (7th Cir. 1996); Reynolds v. Jamison, 488 F.3d 756 (7th Cir. 2007) See also Thornton v. Brown, 2014 U.S. App. LEXIS 3037 (9th Cir 2014) following the reasoning set forth in Drollinger (supra). Thus, Kingsley asserts his claim is not barred under Heck v. Humphrey, 512 U.S. 477 (1994).

14. The thrust of Kingsley's complaint is defendants have and will continue to enforce unconstitutionally arbitrary or

discriminatory rules and conditions of parole upon his release. Defendants actions will lead to Kingsley being further confined, mandated compleation of treatment programs, conflated with a stigmatizing lable as an "Enhanced" Extended Supervision offender in the community. Defendants have made it clear. If Kingsley fails to comply with the conditions of parole he will be revoked and sent back to prison. As this Court noted in <u>Jones v. Puckett,</u> "Heck left open the possibility that a § 1983 suit could be brought to challene allegedly unconstitutional actions that led to extended confinement if the confinement might have followed 'even if' the unconstitutional action had not occurred." 160 F.Supp. 2d 1016, 1019-20 (W.D. Wis. 2001) (emphasis added).

## LIBERTY INTEREST

15. Kingsley asserts he has a protected liberty interest for the following reasons. First, Kingsley was sentenced under Wisconsin State Statue § 973.01(2), to a bifurcated sentence i.e., "in time" and "out time." § 973.01, imposes a mandatory not directory standard of conduct. In turning to the statue it states in part: "... whenever a court sentences a person to imprisonment in the Wisconsin state prisons ... the court 'shall' impose a bifurcated sentence under this section." (Wis. Stat. 2011-12) (emphasis added) See <u>Wagner v. State Medical Examining Board,</u> 181 Wis. 2d 633, 643, 511 N.W. 2d 874, 879 (1994) "[T]he general rule has been [in Wisconsin] that the word "shall" is presumed to be mandatory when it appeal in a statue." (emphasis in original)

16. Moreover, the Wisconsin Court of Appeals maintains a bifurcated sentence means supervision of an individual not incarcerated. Supervision cannot be the same as confinement, as currently defined in the statues. And that the location of the confinement does not determine whether the statue permits confinement as a condition of extended supervision. A person

convicted of a crime cannot be jailed and released at the same time. To hold otherwise would lead to absurd results. See State v. Larson, 2003 WI App. 235, ¶¶ 4-9, 268 Wis. 2d 162, 672 N.W. 2d 333.

17. Secondly, Kingsley's claims are analogous to the Supreme Courts holding in Vitek v. Jones, 445 U.S. 480 (1980) a case in which inmates had challenged a Nebraska law that permitted prison officials to identify certain inmates as mentally ill and transfer them without a hearing to mental institutions for involuntary confinement, coupled with mandated compleation of treatment programs. The Supreme Court held this procedure unconstitutional because the loss of liberty produced by involuntary commitment to a mental institution is "more than a loss of freedom from confinement," Vitek, 445 U.S. at 492, and beyond the range of conditions of confinement justified by imposition of a prison sentence. id. at 493. The Court added that the stigma of the commitment "can have very significant impact on the individual," id. at 492(quoting Addington v. Texas, 441 U.S. 418, 426 (1979)) See Jones, 160 F. Supp. 2d at 1021-22. "[C]ompelled treatment in the form of behavior modification programs was a proper factor to be taken into consideration by the district court. id. using Vitek as its guide."

18. Here, Kingsley has been stigmatized by the classification of an "enhanced" extended supervision offender coupled with involuntary completion of treatment programs conflated with EMP and placed in a correctional halfway house with the threat of revocation. Kingsley proclaims this amalgam creates the kind of deprivations of liberty that requires procedural protections. Indeed, the mere threat of parole revocation "can have very significant impact on the individual." "Simply put, revocation proceedings determine whether the parolee will be free or in prison, a matter of obvious great moment to him [or her]." See Wolff v. McDonnell, 418 U.S. 539, 560 (1974); Morrissey v. Brewer,

408 U.S. 471, 482-33 (1972). "Revocation of parole ... "inflicts a 'grievous loss' on the parolee and often others."(emphasis in original) Furthermore, it is unclear what exactly is meant by the term "enhanced" the dictionary defines "enhanced" "[t]o make greater," [or] "heighten." Webster's II Dictionary (3rd ed. 2005). Kingsley asserts being under "enhanced" extended supervision imposes "atypical and significant hardship on the [parolee] in relation to the ordinary incidents of [parole] life." See Sandin v. Conner, 515 U.S. 472, 484 (1995). Although Sandin is a "prison conditions" case Kingsley believes the language to be useful. "[Liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the due process clause of its own force[.] ..." See Jones, 160 F. Supp. 2d at 1023 (citing Sandin, supra; internal citations omitted).

19. Finally, Kingsley has a liberty interest in avoiding mandated compleation of treatment programs. See Washington v. Harper, 494 U.S. 210, 221 (1990); Enis v. DHSS, 962 F. Supp. 1192, 1197 (W.D. Wis. 1996); See also Youngberg v. Romeo, 457 U.S. 307, 102 (1982). In Youngberg, the Court concluded that involuntary committed patients retain a right under the Due Process Clause to be free from bodily restraint. This Court has previously interpreted Washington, Vitek, and Youngberg to stand for the proposition that prisoners have a "right to be free from unjustified bodily and mental intrusions." Sundby v. Fiedler, 827 F. Supp. 580, 583 (W.D. Wis. 1993) See Kowlin v. Wurl-Koth, 2010 U.S. Dist. LEXIS 102495 (W.D. Wis. 2010) in further support.

### EXCESSIVE FORCE AND PUNISHMENT

20. Kingsley asserts the conditions the defendants tend to impose is equivalent to an unlawful seizure, excessive force, and punishment. Once Kingsley is released he retains and enjoys a 4th Amendment right not to be subjected to force that is "unreasonable" Graham v. Connor, 490 U.S. 386, 393 (1989) rejecting

"notion that all excessive force claims brought under § 1983 are governed by a single, generic standard." Just as a pretrial detainee may not be "punished in any way" by the state, it then stands to reason Kingsley's rights under the U.S. and Wisconsin Constitutions' provides for greater protections not to be subjected to "arbitrary or purposeless" conditions. See Bell v. Wolfish, 441 U.S. 520, 535-39 (1979). And in United States v. Mendenhall, 446 U.S. 544 (1980) the Supreme Court held a person has been seized within the meaning of the 4th Amendment only if in view of all of the circumstances surrounding the incident a reasonable person would have believed that he or she was not free to leave. See also California v. Hodari D, 499 U.S. 279, 113 (1991) even if physical force is absent, submission to an officer's "show of authority" is considered a seizure. Placing Kingsley on EMP and in a correctional facility halfway house coupled with mandated treatment programs conflated with "enhanced" supervision is per se punishment, excessive force, and an unlawful seizure, especially in light of the facts and circumstances that Kingsley was convicted of a non violent drug crime.

CLAIMS FOR RELIEF

21. The actions of Searls and Krueger in imposing and enforcing unconstitutionally arbitrary or discriminatory rules and conditions of extended supervision or parole was unreasonable in violation of the United States and Wisconsin Constitutions.'

22. The failure of Wiersma and Symdon to correct Searls and Krueger's decisions on appeal was unconstitutional arbitrary or unreasonable in violation of the United States and Wisconsin Constitutions.'

**WHEREFORE,** Kingsley requests the Court grant the following relief:
    A. Issue a declaratory judgment stating that:
    1. The rules and conditions of extended supervision by the defendants violated Kingsley's Rights under the United States and Wisconsin Constitutions.'

    B. A trial by Jury.

    C. Award compensatory damages in the following amount:

  1. $5,000 Jointly and severally against all said defendants for the physical and emotional injuries and pain sustained as a result of the Constitutional violations.

    D. Award punitive damages in the following amounts:

  1. $5,000 against all said defendants for punishment, including deprivation of liberty and amenity.

    E. Grant such other relief as it may appear Kingsley is entitled according to law.

I declare under penalty of perjury the foregoing is true and correct.

Dated this 30th day of July, 2014.   Michael B. Kingsley
                                                          Michael B. Kingsley
                                                          Wisconsin Resource Center
                                                          P.O. BOX 220
                                                          Winnebago, WI 54985-0220

                                                          Plaintiff Pro Se